*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CF-1282

GEORGE A. EDWARDS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2015-CF1-016138)

(Hon. Florence Pan, Trial Judge)

(Argued December 4, 2019                          Decided June 8, 2023)

*Cecily E. Baskir* for appellant.

*Dan Honold*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time of filing, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *David Misler*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH, *Associate Judge*, and RUIZ and THOMPSON,[*] *Senior Judges*.

---

[*] Judge Thompson was an Associate Judge of the court at the time of argument. On February 18, 2022, she began her service as a Senior Judge. *See* D.C. Code § 11-1504.

BECKWITH, *Associate Judge*: A grand jury indicted appellant George Edwards for first-degree murder while armed and related assault and gun charges[1] arising from an incident that began when Mr. Edwards went to confront a man who had just assaulted his girlfriend. After Mr. Edwards encountered that man and several others in a nearby yard, the men exchanged words, gunshots were fired by several people—including Mr. Edwards—and a man named Reginald Perry was fatally shot.

The government offered Mr. Edwards a plea to second-degree murder while armed.[2] The government's factual proffer did not allege that Mr. Edwards fired the shot that killed Mr. Perry, but alleged guilt under a so-called "gun battle" (or sometimes "urban gun battle") theory of causation first recognized by this court in *Roy v. United States*, 871 A.2d 498 (D.C. 2005). The gun-battle theory of causation posited that individuals with guns, identified by the court as "street combatants," could under certain circumstances be convicted as principals of second-degree murder even in the absence of evidence that the fatal shot came from their gun. *Id.*

---

[1] D.C. Code §§ 22-2101, -4502; four counts of assault with intent to kill while armed, D.C. Code §§ 22-401, -4502; five counts of possession of a firearm during a crime of violence, D.C. Code § 22-4504(b); and three counts of carrying a pistol without a license, D.C. Code § 22-4504(a).

[2] Under the plea agreement, Mr. Edwards would plead to second-degree murder while armed in exchange for the government dismissing the remaining counts in the indictment.

at 506 n.8, 508. At a plea hearing, Mr. Edwards initially balked at the government's proffer, stating that he had intended to confront the man who had assaulted his girlfriend, not to shoot him, and that he was not the first one to pull or to fire a gun. Mr. Edwards asked the trial judge a series of questions about the applicability of self-defense and imperfect self-defense to his case and also asked whether his attempt to withdraw from the situation affected his culpability. He ultimately went through with the plea after his attorney agreed with the prosecutor's statement that self-defense was not available to him.

In this appeal, Mr. Edwards challenges on several grounds the trial court's subsequent denial—prior to sentencing—of his motion to withdraw that plea. For the reasons in this opinion, we reverse the trial court's order denying Mr. Edwards's request for plea withdrawal and remand to allow Mr. Edwards to withdraw his plea.[3]

---

[3] Mr. Edwards filed a motion in the trial court seeking release pending appeal, and the trial court denied that motion after concluding that Mr. Edwards failed to demonstrate by clear and convincing evidence that he did not pose a danger to any person. Mr. Edwards then filed a new motion for release pending appeal in this court asking us to reverse the trial court's denial of his request for release. As this opinion resolves the appeal and Mr. Edwards can seek release in the trial court, we now deny that motion as moot and the Clerk shall issue the mandate forthwith.

## I.    Facts and Procedural History

## A.    The Guilty Plea

In September of 2016, the trial court held a plea hearing at which the government stated its intent, if this case were to go to trial, to prove the following facts beyond a reasonable doubt. Mr. Edwards's girlfriend told Mr. Edwards that she had just been assaulted and that her assailant was outside with other individuals who "were dangerous and likely armed with firearms." According to the proffer, Mr. Edwards, "with the intent to shoot" the man who assaulted his girlfriend and "armed with two semiautomatic firearms," walked through a gate between two buildings and "opened fire" on the group of people that included Reginald Perry. The group "returned gun fire" and Mr. Edwards was struck in the leg before he fled. Mr. Perry was also shot; after the gunfire stopped, he was found fatally injured with gunshot wounds to the lower back and foot.

The government did not allege that Mr. Edwards was the one who shot Mr. Perry or that he aided and abetted the shooting. Instead, relying on the gun-battle theory of causation, the government proffered that Mr. Edwards's conduct "was a substantial factor in bringing about the death of" Mr. Perry. Under that theory, set forth in *Roy v. United States*, the government could establish causation for second-degree murder without showing which bullet caused the decedent's death if it proved

beyond a reasonable doubt that the defendant was "armed and prepared to engage in a gun battle," that he "did engage in a gun battle," that his conduct "was a substantial factor in the death" of the decedent, that it was "reasonably foreseeable that death or serious bodily injury could occur as a result of [the defendant's] conduct during the gun battle," and that the defendant "did not act in self-defense." *Fleming v. United States*, 224 A.3d 213, 223 (D.C. 2020) (en banc); *Roy*, 871 A.2d at 506 n.8, 508.[4]

When the trial court asked Mr. Edwards if that was what happened, Mr. Edwards responded under oath, "To a certain extent." He then stated that he "did not come out there with the intention to kill anybody" but "came out there to confront the person"—"to talk to the guy." As Mr. Edwards described it: "The guy pulls out a gun. I pull out my gun. He drops his gun. I pick up his gun. Put his gun in my waistband." The man then pulled out another gun, the men exchanged words, and Mr. Edwards began backing up "to withdraw" when "the gun fire started going back and forth."

Hearing Mr. Edwards stray from the proffer, the prosecutor argued that Mr. Edwards was still guilty under a gun-battle theory of criminal liability because he

---

[4] After Mr. Edwards's sentencing in the present case, this court, sitting en banc, overruled *Roy*'s recognition of a "substantial factor" form of causation, holding that it was "not remotely equivalent to" what the en banc court clarified was "a requirement of but-for causation." *See Fleming*, 224 A.3d at 223.

had gone out armed and prepared to engage in a gun battle. In the prosecutor's view, "self-defense would not apply in this situation." And while Mr. Edwards stated that he did not come to the scene intending to shoot anyone, that he "tr[ied] to withdraw,"[5] and that he did not fire first, defense counsel agreed with the prosecutor that self-defense was not an option, stating, "We talked about it a lot. I think under the case law though it would be second degree [murder]."

The trial court was "not so certain" that Mr. Edwards's conduct was not self-defense and stated that "perhaps he [was] trying to withdraw." It ultimately concluded that the plea could go forward even if Mr. Edwards did not fire the first shot and even if his attempts to back away did "count[] as a withdrawal" because there was a sufficient factual basis for his guilt under the gun-battle theory. In the court's view, he "might not have started it but he came prepared to do it," though "in his mind perhaps in self-defense."

Mr. Edwards—focused more on whether he could present any defense to the jury than whether there was a factual basis for his plea—continued to ask about self-defense. He asked whether, even if he had put himself in a position that would

---

[5] A surveillance video of the shooting shows Mr. Edwards enter the walkway, point one of his guns at something off screen, and then walk backward toward the closed gate while reaching his hand toward the gate as if to open it.

provoke conflict, he was "entitled to imperfect self-defense," for example, "where the voluntary manslaughter would be the lesser of second degree?" The trial court—which *was* focused on factual basis—responded: "Here's the thing, Mr. Edwards. If you plead guilty at this time you're not going to pursue any defenses. So we're sort of not talking about what defenses you would have at this point." The court was persuaded that there was a factual basis under the gun-battle doctrine because "at the end of the encounter both sides have fired their guns and somebody ended up losing their life." In a comment that reinforced the prosecutor's previous assertion that self-defense was not available to Mr. Edwards, the trial court stated that the point of the gun-battle doctrine was to "not allow people to escape responsibility . . . by parsing the situation into certain moments where they perhaps were withdrawing or perhaps acting in self-defense in a particular moment."

In fact, that the defendant did not act in self-defense was one of the elements the government had to prove beyond a reasonable doubt—gun battle or no gun battle. *See Fleming*, 224 A.3d at 223. Mr. Edwards's trial counsel did not respond to the court's contrary statement, however, and Mr. Edwards went through with the plea to second-degree murder while armed. Though Mr. Edwards had contradicted the government's proffer that he went to the scene "with the intent to shoot," that he was the one who "start[ed] firing multiple shots," and that the other men only "returned fire" in response to Mr. Edwards's shooting, the trial court concluded that there was

a factual basis for the plea.

## B.   Motion to Withdraw Guilty Plea

Eight weeks after the plea—but before sentencing—Mr. Edwards's attorney filed on his behalf a motion to withdraw his guilty plea, contending that Mr. Edwards was innocent of second-degree murder while armed and that the government was not prejudiced by the passage of time between the plea and the motion to withdraw it. In his own pro se supplemental motion, Mr. Edwards stated that he had not understood that viable defenses were available to him if he went to trial and that his attorney had misadvised him on the law of self-defense and the gun-battle theory. He also stated that he tried to contact his attorney for help in withdrawing his guilty plea the day after he entered it.

After holding hearings on the motion in December 2016 and August 2017, the trial court denied Mr. Edwards's request to withdraw his guilty plea. The court reached its decision after assessing the relevant factors from our case law—the assertion of legal innocence, any delay in seeking to withdraw the plea, and the competence of counsel, *see Gooding v. United States*, 529 A.2d 301, 306-07 (D.C. 1987)—and concluding that they cut against allowing Mr. Edwards to withdraw his plea.

## II.  Discussion

Mr. Edwards contends on appeal that the trial court committed reversible error in rejecting his presentence plea withdrawal motion.  Under Rule 11 of the Superior Court Rules of Criminal Procedure, a defendant may take back a guilty plea by demonstrating that "justice demands withdrawal under the circumstances of the case."  *Long v. United States*, 169 A.3d 369, 374 (D.C. 2017) (quoting *Maske v. United States*, 785 A.2d 687, 693 (D.C. 2001)); Super. Ct. Crim. R. 11(d). When a defendant invokes the "justice demands withdrawal" standard—as Mr. Edwards did here[6]—the applicable legal test "varies depending on whether the withdrawal motion is brought before or after sentencing."  *Gooding*, 529 A.2d at 306.  A presentence motion to withdraw is "regarded more leniently" and should be considered favorably "if for any reason the granting of the privilege seems fair and just."  *White v. United States*, 863 A.2d 839, 841-42 (D.C. 2004) (quoting *Springs v. United States*, 614 A.2d 1, 4 (D.C. 1992)); Super. Ct. Crim. R. 11(d)(2)(b).  In other words, courts should "freely allow[]" a request to withdraw under these circumstances.  *Gooding*,

---

[6] Mr. Edwards also contends that his motion should have been granted on the ground that there was a "fatal defect in the Rule 11 proceeding when the guilty plea was taken."  *Pierce v. United States*, 705 A.2d 1086, 1089 (D.C. 1997).  The government argues that Mr. Edwards waived this challenge.  In light of our disposition on the "justice demands withdrawal" ground, we need not decide this question.

529 A.2d at 311.

As noted above, we have set out certain factors for a trial court to consider when evaluating a motion to withdraw a guilty plea under the "fair and just" standard. These are, more precisely, "whether the defendant has asserted his or her legal innocence," "the length of the delay between the entry of the guilty plea and the desire to withdraw it," and "whether the accused has had the full benefit of competent counsel at all relevant times." *Springs*, 614 A.2d at 4 (quoting *Gooding*, 529 A.2d at 306-07). The circumstances of an individual case may reveal other factors relevant to whether a motion to withdraw the plea should be granted, and we consider all factors cumulatively. *Id.* We review the trial court's assessment of these factors for an abuse of discretion, *id.*, and it is an abuse of that discretion "if the trial judge rests his or her conclusions on incorrect legal standards," *Jones v. United States*, 17 A.3d 628, 631 (D.C. 2011) (quoting *Blackson v. United States,* 979 A.2d 1, 6 (D.C. 2009)).

## A. Legal Innocence

A defendant seeking to withdraw his plea must put forth some facts that "when accepted as true, make out some legally cognizable defense to the charges." *Springs*,

614 A.2d at 5.[7] Here, the trial court stated that whether Mr. Edwards had a viable defense to second-degree murder was "not the legal analysis," telling Mr. Edwards: "You gave up the right to raise these defenses when you decided to plead guilty. . . . Now you've just changed your mind." The trial court thus rejected Mr. Edwards's assertion of legal innocence without determining whether he had presented any legally cognizable defenses. According to the court, it did not matter whether Mr. Edwards had a viable defense to the charges against him because Mr. Edwards and the judge had already discussed defenses at the plea proceeding and Mr. Edwards still decided to go ahead with the plea. In other words, "getting into the we[ed]s" of Mr. Edwards's potential defenses was "not the purpose of this hearing" because in

---

[7] While the defendant must make more than a "bald assertion of innocence," *Springs*, 614 A.2d at 5, "[w]here the accused seeks to withdraw his plea of guilty before sentencing[] on the ground that he has a defense to the charge," the court "should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant." *Gearhart v. United States*, 272 F.2d 499, 502 (D.C. Cir. 1959); *see also Gooding*, 529 A.2d at 306 (quoting *Gearhart*, 272 F.2d at 502); *Springs*, 614 A.2d at 5; *Hunter v. United States*, 548 A.2d 806, 809 (D.C. 1988). Though this rule does not preclude a trial court from weighing the credibility of the defendant's assertion of innocence as against the sworn statements he made at the plea hearing, *see White*, 863 A.2d at 842, in this case, the court acknowledged that Mr. Edwards's testimony at the time of the plea was largely consistent with his subsequent assertions of legal innocence at the plea withdrawal hearing. The court stated, for example, that "the facts that you gave me at the plea hearing"—namely, that he did not fire the first shot and that there was a point at which he was "trying to back away and get out"—were "pretty much what you're saying today [at the withdrawal hearing]."

the court's view, nothing had changed.

The trial court's conclusion that the existence of any defenses did not matter to the plea withdrawal analysis rested on a premise that was mistaken both factually and legally. As an initial matter, the court's statement that Mr. Edwards took the plea with full awareness of the defenses he was forgoing misapprehends what happened at the plea proceeding. The unusual hearing was devoted largely to a colloquy between the trial judge and Mr. Edwards himself—not his attorney—about what, if any, defenses Mr. Edwards would be permitted to present to the jury if he went to trial. Mr. Edwards clearly conveyed that his decision to plead guilty hinged on whether he could present a defense to the jury. He asked questions about gun battle, withdrawal, and whether his conduct might be a lesser offense, and for the most part he deferred to the judge and the lawyers' answers. His actions, to him, seemed like self-defense.[8] But his lawyer indicated otherwise, and in the end what removed this obstacle to the plea was Mr. Edwards's misunderstanding of the law, reinforced by the court, the prosecutor, and defense counsel. He ultimately agreed to plead only after being told—erroneously—that his potential defenses were

---

[8] At the plea withdrawal hearing, Mr. Edwards explained that on the day he took the plea, he was "pondering" whether to do so and his "whole issue with that was that I thought I wouldn't be able to receive a self-defense instruction," which he viewed as critical to his chances of being acquitted at trial.

foreclosed. At the plea withdrawal hearing, the trial court suggested that Mr. Edwards understood that he could have presented certain defenses at trial and knowingly waived his right to do so when he pleaded guilty. That characterization contradicts the record of the plea hearing, where, among other things, the trial court described "urban gun battle" as a doctrine that would "not allow people to escape responsibility" even where they were "withdrawing or perhaps acting in self-defense."

Aside from factually misconstruing the discussion preceding Mr. Edwards's plea, the trial court also misapplied the legal standard for evaluating Mr. Edwards's assertion of legal innocence by declining to engage in an assessment whether Mr. Edwards had presented facts that, taken as true, made out "some legally cognizable defense to the charges." *Springs*, 614 A.2d at 5. At the plea hearing, when Mr. Edwards was trying to get accurate information to help him ascertain whether his chances at trial were as bleak as his lawyer had indicated, the trial court was focused on the factual basis for the plea and told Mr. Edwards that they were "not talking about what defenses [he] would have at this point." Then when Mr. Edwards was finally equipped with legal knowledge that would have halted the plea, the court would not hear *those* arguments because in its view, Mr. Edwards "knew about these defenses at the time of the plea colloquy" and was in "no different position" at the plea withdrawal hearing. This Catch 22 was not a valid basis for deeming irrelevant

Mr. Edwards's defenses—some of which the court largely acknowledged were legally cognizable.[9] *See Johnson v. United States*, 398 A.2d 354, 367 (D.C. 1979) (noting that a trial court abuses its discretion if its "decision is supported by improper reasons . . . or reasons which contravene the policies meant to guide the trial court's discretion").

Other legal errors also underlay the trial court's rejection of Mr. Edwards's assertion of legal innocence. The trial court suggested, for example, that an "extreme circumstance" was required to "undo a plea," when in fact judges are supposed to "freely allow[]" a presentence plea-withdrawal motion when it is "fair and just" to do so. *Gooding*, 529 A.2d at 311. In that same vein, the court repeatedly referred to Mr. Edwards's need to show "factual innocence"—a more difficult showing than the "assertion of legal innocence" factor our cases direct courts to consider. At one point the court incorrectly stated that the analysis did not "turn[] on what the defenses are and whether they might be good" but "on whether he's asserting factual

---

[9] For the most part, the trial court did not discredit Mr. Edwards's account of the incident—that he did not pull or fire his gun first, for example, and that he tried to get out of the yard when the shooting started. At the plea hearing, the court noted that Mr. Edwards "might not have started it," that he acted "in his mind perhaps in self-defense," and that "perhaps he [was] trying to withdraw." The court later stated that Mr. Edwards was relying on the same facts at the plea withdrawal hearing that were before the court at the plea proceeding.

innocence."[10]  The trial court's rejection of Mr. Edwards's assertion of innocence may also have stemmed in part from its misunderstanding of the gun-battle doctrine as a theory of intent rather than a theory of causation.  In the end, the court's misapplication of the relevant law took the force out of Mr. Edwards's contentions as to why the "assertion of legal innocence" factor of the plea-withdrawal analysis was in his favor.

Had the court acknowledged the relevance of such evidence, the record demonstrates that Mr. Edwards had a number of potential defenses supporting a claim of legal innocence.  Again, this was a case in which the government did not proffer evidence that Mr. Perry was shot by Mr. Edwards and was not alleging guilt under an aiding and abetting or felony murder theory.  To establish causation under a gun-battle theory, the case law in effect at the time of the plea hearing required the government to prove, among other things, that Mr. Edwards had "prepared for and undertook to participate in the gun battle."  *Roy*, 871 A.2d at 509; *see also Fleming*

---

[10] *See* Transcript of 12/9/16 at 7 ("[A]nother thing that the Court of Appeals wants me to look at is an assertion of factual innocence . . . ."); *id.* at 7 ("And so if that's the only basis of factual innocence you're relying on, I don't think it is a basis of factual innocence."); Transcript of 8/17/17 at 9 ("And the legal standard now is, is he making a claim of factual innocence?"); *id.* (noting that it is different from factual innocence to just say "I had a defense"—"[a]ll defendants have a defense and they waive that defense when they plead guilty"); *id.* at 69 ("Because I don't see a claim of factual, legal innocence that's any different from what you said to me at the plea hearing where we decided that that wasn't a claim of factual legal innocence.").

*v. United States*, 224 A.3d at 223 (explaining *Roy*'s application and overruling it). Yet Mr. Edwards explicitly stated at the plea proceeding that he only meant to "talk to" and "confront" the person who assaulted his girlfriend, and that he "did not come out there with the intention to kill anybody." He said that he did not fire first and only returned gunfire, and his claim that he "back[ed] up to withdraw" was consistent with surveillance footage showing him back up with his hand reaching behind toward the gate.[11] Mr. Edwards also raised cognizable claims of imperfect self-defense that would allow for conviction on the lesser offense of voluntary manslaughter if his belief of imminent danger or need to use deadly force "was in fact actually and honestly held but was in one or both respects objectively unreasonable"—even when he played some part in "bringing on the difficulty." *Swann v. United States*, 648 A.2d 928, 930, 933 (D.C. 1994); *see also Bassil v. United States*, 147 A.3d 303, 307 (D.C. 2016) (noting that a defendant who acts in imperfect self-defense lacks the malice required for second-degree murder).

The court thus entered Mr. Edwards's plea with questionable causation (even

---

[11] Mr. Edwards elaborated upon this at the plea withdrawal hearing, stating that firing his gun was "the only way [he] could survive the situation." He conceded that he was in possession of two guns at the time of the events leading to Mr. Perry's death but denied having affirmatively armed himself "for the situation" as he was already carrying the guns before the situation arose.

under the *Roy* standard later overruled by *Fleming*) and in the face of statements that were antithetical to the requisite element of malice.[12] The court did so notwithstanding the substantial basis in the record for cognizable defenses—such as that the version of events proffered by Mr. Edwards contradicted critical parts of the government's proffer and did not satisfy the elements of the gun-battle theory of causation, that he acted in self-defense, and that even if he jeopardized a self-defense

---

[12] Although we need not decide Mr. Edwards's contention that fatal defects in the plea proceeding invalidated his guilty plea, the defects he alleges bear on the assessment of his assertion of legal innocence. Most notably, the court did not inform Mr. Edwards of the elements of second-degree murder, *see McCarthy v. United States*, 394 U.S. 459, 467 (1969), and did not deal with the inconsistency between those elements and Mr. Edwards's own account of the events that resulted in Mr. Perry's death, in which he disputed that he acted with malice. "[A]n essential component of malice"—on which the government bears the burden—is "the absence of justification, excuse, or mitigation." *Comber v. United States*, 584 A.2d 26, 38-41 (D.C. 1990) (en banc). Mr. Edwards indicated, however, that his conduct was mitigated in a way that would at the very least reduce murder to manslaughter, describing an incident in which he did not fire first, fired only to defend himself from being killed or seriously injured, and tried to withdraw while he was under fire. The trial court, having acknowledged that Mr. Edwards was "in his mind perhaps" acting in self-defense, failed to ensure "that the conduct which the defendant admits constitutes the offense charged." *Kyle v. United States*, 759 A.2d 192, 198 (D.C. 2000); *see also McCarthy*, 394 U.S. at 467 n.20 (stating that, "where the charge encompasses lesser included offenses, personally addressing the defendant as to his understanding of the essential elements of the charge to which he pleads guilty would seem a necessary prerequisite to a determination that he understands the meaning of the charge"). The court's omissions cast doubt upon the validity of the factual basis for the plea. *See United States v. Culbertson*, 670 F.3d 183, 190 (2d Cir. 2012) ("[I]t is error for the court to find that a factual basis exists when the defendant actively contests a fact constituting an element of the offense in the absence of circumstances warranting the conclusion that the defendant's protestations are 'unworthy of belief.'" (quoting *Godwin v. United States*, 687 F.2d 585, 590 (2d Cir. 1982))).

claim by putting himself in a position where his presence would provoke trouble, the evidence that he tried to withdraw was sufficient to allow a jury to decide whether self-defense justified his conduct. *See Dawkins v. United States*, 189 A.3d 223, 232 n.15 (D.C. 2018).

In sum, the trial court here placed barriers in the way of Mr. Edwards's plea withdrawal based on its factual view that Mr. Edwards understood the defenses he was giving up and based on its legal view that because he understood the defenses, his assertion of legal innocence was irrelevant as nothing had changed. The factual view is at odds with the transcript of the plea hearing and the legal view defies the rule that such motions should be freely granted. In fact a lot *had* changed. It is plain on this record that at the plea hearing, Mr. Edwards came to believe—based on misleading and unfounded information—that he had no viable defense to murder under the gun-battle doctrine, and by the time of the plea withdrawal hearing, he understood that he had pleaded guilty to an offense that, under his consistent description of it, he might not be guilty of. He also understood that a jury considering that offense would be instructed on self-defense and that the government would have to prove beyond a reasonable doubt that he did not "actually and reasonably believe [him]self to be in imminent danger of bodily harm." *See Parker v. United States*, 155 A.3d 835, 845-46 (D.C. 2017). In these circumstances, the assertion-of-legal-innocence factor weighs in Mr. Edwards's favor.

## B.     Delay

The factor of delay examines the length of time between the day Mr. Edwards took the plea and the time he sought to withdraw it, calculated based on the "first record evidence" of his desire to withdraw the plea, not the day the motion was filed. *White*, 863 A.2d at 844; *see also Gooding*, 529 A.2d at 307, 310-11 (finding that the length of delay was "a few days" even though the formal motion was filed two months later).

At the plea withdrawal hearing, Mr. Edwards argued that the relevant delay was the 15 days between September 8, when Mr. Edwards pleaded guilty, and September 23, the first time after the plea proceeding that his lawyer visited him at the jail, when Mr. Edwards told him that he wanted to withdraw his plea. The trial court was skeptical of counsel's statement that at the first jail visit, Mr. Edwards said something akin to, "I think I want to go ahead and withdraw, I made a mistake, I want to withdraw my guilty plea." Noting that counsel had earlier described Mr. Edwards as only "thinking about" trying to withdraw his plea, the court stated that defense counsel "probably filed the motion" weeks later, on November 7, 2016, because that was when Mr. Edwards first definitively communicated an interest in

withdrawing his plea.[13]   Noting that Mr. Edwards had not had "a swift change of heart," the court determined that the relevant time frame was the eight-week period between the September 8 plea and a later jail visit just before counsel filed the plea withdrawal motion.

Even assuming that the trial court permissibly rejected Mr. Edwards's contention that he sought to withdraw his plea almost immediately and informed his lawyer at the first chance, the court acknowledged that the longer time between the guilty plea and the filing of the motion to withdraw the plea still was not a "huge amount of time" and that, despite the delay, there was no "substantial prejudice" to the government.  We agree, particularly given that Mr. Edwards pleaded guilty just three weeks after he was indicted.  We therefore disagree with the court's conclusion that the delay factor favored denying Mr. Edwards's motion.  While the court ruled that this factor still favored the government because, in its view, Mr. Edwards had

---

[13] At the December 2016 plea withdrawal hearing, defense counsel stated that Mr. Edwards told him on September 23—during their first visit after the guilty plea—that "he was thinking about" withdrawing the plea.  At the subsequent continuation of the hearing, counsel sought to clarify that what Mr. Edwards told him during that visit at the jail "was probably a little bit stronger" and made clearer his desire to withdraw his plea.  According to defense counsel, in early November, several weeks after that first visit, he promptly filed the motion to withdraw after a subsequent visit with Mr. Edwards at the jail—a visit he made after one of Mr. Edwards's family members called to tell him that Mr. Edwards wanted to speak to him.

not pleaded guilty "in haste or confusion," prejudice to the government is the main consideration in assessing delay.[14]  Here, neither the government nor the trial court has identified any basis for concluding that the eight-week delay—no less the much shorter delay supported by Mr. Edwards's testimony and his trial lawyer's proffer— would have prejudiced the government sufficiently to warrant denying a presentence motion to withdraw a plea.[15]

## C.      Competent Counsel

Finally, we turn to the question whether Mr. Edwards "had the full benefit of competent counsel at all relevant times."  *Gooding*, 529 A.2d at 307.  The trial court stated that "we can cross off the list the benefit of competent counsel" as "there's no question" Mr. Edwards's attorney had "represented [Mr. Edwards] very ably here"

---

[14] When there has been some delay, we will consider prejudice to the government's "legitimate interests," and "where such prejudice is absent or minimal, withdrawal is routinely permitted."  *Gooding*, 529 A.2d at 307 (quoting *United States v. Roberts*, 570 F.2d 999, 1011 (D.C. Cir. 1977)).

[15] The court also noted that when the government agrees to give a defendant certain benefits for pleading guilty, "there is an institutional interest" that "that bargain be honored," and "some prejudice" stems from the fact that "a deal was struck."  Yet this applies to all plea proceedings and, if given much weight, it would nullify the standard that courts should freely grant a presentencing request for plea withdrawal.  The same is true of the court's statement that routinely allowing plea withdrawal in the absence of "extreme circumstances" or "something significant" justifying a defendant's release from the bargain "would just wreak havoc on the system."

and therefore no question that this factor cut against Mr. Edwards. More specifically, the court said this issue was "off the table" because defense counsel had appeared before the court in previous cases and the court had "never in [its] extensive dealings with [counsel] had any doubt that he would comport himself appropriately, professionally and give appropriate legal advice."

At the outset, the trial judge's conclusion that counsel was skillfully representing Mr. Edwards based in part upon her prior experience with him is not a proper basis for judging a lawyer's competence in a particular case. *See Nelson v. United States*, 601 A.2d 582, 592 (D.C. 1991) ("Simply declaring that counsel was a competent attorney . . . did not establish that she was capable of rendering adequate assistance *in this case*."); *Monroe v. United States*, 389 A.2d 811, 822 (D.C. 1978) (noting that the trial court erroneously "accorded dispositive weight to the fact that appointed counsel was a highly competent attorney who was present to defend []the accused[]"). It was also demonstrably untrue on this record, which includes counsel's own concessions regarding his misunderstanding of case law, the resulting significant misadvice to Mr. Edwards, and the failure to promptly ascertain and act upon Mr. Edwards's desire to withdraw his plea.

Most notably, trial counsel failed to advocate for Mr. Edwards in critical respects at the plea proceeding, leaving Mr. Edwards to advocate for himself.

Throughout the hearing, Mr. Edwards pushed back against the government's factual basis for the plea and offered a different account in which he had acted in self-defense or otherwise lacked the malice required for conviction of second-degree murder. He asked the court a series of questions about how he could be guilty if he did not intend to shoot anybody and why he did not have a self-defense or provocation claim—all signaling his reluctance to take the plea if he could present a legally recognized defense. These questions prompted inaccurate information or went unheeded. For example, while Mr. Edwards had no shortage of potential defenses, his counsel sided with the government, indicating not only that "under the case law" Mr. Edwards's conduct "was second degree," but also that the defenses he was asking about were not available to him for one reason or another. As Mr. Edwards put it, counsel led him to believe that he "wouldn't be entitled to[] a self-defense instruction" and that without one he "was basically going to trial to lose."[16]

Counsel's lapses made it difficult for him to meaningfully advise his client on the thing Mr. Edwards made clear he cared about most while considering a plea: his chances of being acquitted at trial and his chances of being convicted of a lesser offense. At the time of the plea, counsel was not well versed in this court's precedent

---

[16] By the time of the plea withdrawal hearings, counsel had revised his view and now asserted that Mr. Edwards would have been entitled to a self-defense instruction. Transcript of 8/17/17 at 12-14, 17-18.

regarding the doctrine the government was relying upon to overcome the lack of proof that Mr. Edwards fired the shot that killed Mr. Perry. *See Hilliard v. United States*, 879 A.2d 669, 671 (D.C. 2005) (noting that there would be "no doubt that [defense] counsel's performance was constitutionally deficient" if he provided erroneous information or improper legal advice). Counsel did not fully grasp that the gun-battle cases set forth a theory of causation, that the doctrine was controversial, and that contrary to the trial court's suggestion, self-defense was still a basis for acquittal of murder under a gun-battle theory. Defense counsel also did not know that a recent case involving the theory, *Fleming v. United States*, 148 A.3d 1175 (D.C. 2016), was a strong candidate for en banc review in this court.[17] Counsel stated that when he and Mr. Edwards were negotiating the plea, he had only read one gun-battle case—*Roy v. United States*—but had not read this court's later decisions.

---

[17] The signs of the doctrine's potential vulnerability were not indistinct. A concurring judge who deemed the division in *Fleming* to be bound by *Roy v. United States* nonetheless wrote separately to "explain the flaws with *Roy*'s causation reasoning and to call for en banc review to reject *Roy*'s gun-battle theory of guilt for murder." *Fleming*, 148 A.3d at 1185 (Easterly, J., concurring in the judgment). And in a case recently argued before this court, the government itself suggested that this concurrence and its reliance upon a Supreme Court case decided two years before the plea hearing, *Burrage v. United States*, 571 U.S. 204 (2014), "presage[ed] the en banc Court's opinion" and thereby demonstrated that a challenge to a "substantial factor" causation instruction was not novel and that appellant did not establish cause for failing to object to the instruction at trial. Brief for Appellee at 19-22, *Walker v. United States*, No. 22-CO-90 (D.C. filed July 15, 2022).

He was also unaware that this court had actually granted rehearing en banc some seven weeks prior to the final plea withdrawal hearing. *Fleming v. United States*, 164 A.3d 72 (D.C. 2017) (mem.).[18] As a result, counsel mistakenly treated the by-then-vacated panel decision in *Fleming* as good law in his arguments to the trial court,[19] thus relinquishing a chance to argue that the grant of rehearing cast some doubt upon the validity of gun-battle prosecutions and thus lent support to Mr. Edwards's assertion that it was fair and just to grant his presentence plea withdrawal motion.

Further, the trial court did not address the possibility that counsel's

---

[18] Counsel did state that he subsequently looked at *McCray v. United States*, 133 A.3d 205, 225 (D.C. 2016), and the division's opinion in *Fleming v. United States*, 148 A.3d 1175 (D.C. 2016), *vacated*, 164 A.3d 72 (D.C. 2017) (en banc), but he did not appear to know what was happening on rehearing leading up to the court's June 29, 2017, order granting rehearing en banc and vacating the division's opinion. This included the filing of the petition for rehearing in December of 2016, the court's subsequent request for a response from the government, the filing of an amicus brief in support of rehearing en banc, and the filing of the government's opposition to rehearing. Indeed, exactly one week before the August 17, 2017, hearing on Mr. Edwards's plea withdrawal motion, Mr. Fleming filed his en banc brief on the merits, which asked this court to overrule *Roy v. United States* and reject the gun-battle theory of criminal responsibility in murder cases.

[19] The prosecutor and the trial court did not question counsel's reliance upon *Fleming*. At one point, the court stated that the gun-battle case law had not changed. And later, when counsel asked the trial court whether it was familiar with *Fleming*, the court said "[n]ot off the top of my head." That was consistent with the trial judge's statement at the plea proceeding that she "ha[d]n't read these cases recently."

representations and advocacy regarding the plea withdrawal motion were hampered by a conflict of interest, particularly once Mr. Edwards made clear his claim that he was misled by his lawyer regarding the gun-battle theory and the availability of a self-defense instruction. This conflict had the potential to jeopardize Mr. Edwards's motion in many ways, but one in particular loomed large: counsel's initial downplaying of his role in the delay in seeking plea withdrawal by characterizing Mr. Edwards as merely contemplating seeking plea withdrawal[20]—rather than being determined to do so—at counsel's first post-plea visit with Mr. Edwards at the jail.[21] Even after counsel clarified at the second hearing that in fact Mr. Edwards was not so equivocal about wanting to withdraw his plea at that first meeting, the trial court credited counsel's initial descriptions over his subsequent characterization and over Mr. Edwards's own consistent statements that he and his family were trying from the outset to reach counsel to get the ball rolling on plea withdrawal.

---

[20] At the first of the two plea withdrawal hearings, counsel described Mr. Edwards as "thinking about withdrawing the guilty plea," stating, "He did not formally say at that time yes, I definitely want to withdraw it, but he definitely gave an indication that he was thinking about it."

[21] Mr. Edwards raises the trial court's failure to address counsel's evident conflict of interest as an independent basis for reversal. We need not address that freestanding challenge in light of our disposition on Mr. Edwards's argument that the trial court abused its discretion in concluding that it was not fair and just to permit Mr. Edwards to withdraw his plea.

The record shows that Mr. Edwards wanted to go to trial if he had a viable defense—specifically if the jury could be instructed on self-defense—and that he took the plea after his counsel unreasonably relinquished his self-defense claim at the plea colloquy. The record also shows that, even though counsel later walked back that concession and argued ardently that Mr. Edwards's plea was based on a misunderstanding of the law,[22] the trial court still relied on it in rejecting Mr. Edwards's request to withdraw his plea.[23] For these reasons, the trial court's conclusion that Mr. Edwards had the benefit of competent counsel is unsupported by the evidence and the trial court erroneously concluded that this factor cut against

---

[22] Defense counsel further argued that the government's proffer was insufficient to support a conviction under the gun-battle doctrine and that Mr. Edwards would have been entitled to a self-defense instruction. This was consistent with Mr. Edwards's statements that after pleading guilty, he learned "that it doesn't matter how weak the evidence is, as long as it's some evidence to support a certain instruction, [he's] entitled to that instruction and [he] wasn't told that." Mr. Edwards also stated that when he took the plea, he did not understand the "urban gun battle" theory of criminal liability that the trial court described as precluding self-defense, and he did not know that once a defendant presents an adequate basis for self-defense, the government is required to prove beyond a reasonable doubt that "the defendant did not act in self-defense at the time he participated in the gun battle."

[23] At the plea withdrawal hearing the trial court repeatedly stated that "everyone agreed" and that "the defense agreed" that the facts constituted second-degree murder. Notwithstanding the indications in the record that defense counsel's mistakes actually prejudiced Mr. Edwards, prevailing under the "justice-demands-withdrawal" standard does not require a strict showing that counsel's deficient performance was prejudicial—particularly in the case of a presentence withdrawal motion. *See, e.g.*, *Gooding*, 529 A.2d at 311; *see also id.* at 306 (stating that such a motion should be granted "if for any reason the granting of the privilege seems fair and just" (quoting *Kercheval v. United States*, 274 U.S. 220, 224 (1927))).

Mr. Edwards's effort to withdraw his plea.

## III.  Conclusion

For the foregoing reasons, we reverse the trial court's denial of Mr. Edwards's presentence motion to withdraw his plea and remand with instructions that he be permitted to withdraw his plea.

*So ordered.*